IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

PAUL RENFROE and
DIANE RENFROE,

       Plaintiffs,

vs.                                No. 14-2914-STA-dkv

FLAGSTAR BANK,
GOVERNMENT NATIONAL MORTGAGE ASSOCIATION,
MORTGAGE ELECTORNIC REGISTRATION SYSTEM,
SELENE FINANCE, LP, and
PLANET HOME LENDING, LLC,[1]

       Defendants.

REPORT AND RECOMMENDATION ON THE DEFENDANTS' MOTIONS TO DISMISS

On October 6, 2014, the plaintiffs, Paul Renfroe, Jr. and Diane Renfroe ("the Renfroes"), filed a *pro se* complaint in the Chancery Court of Shelby County alleging that the defendants, Flagstar Bank, FSB ("Flagstar"), Government National Mortgage Association ("Ginnie Mae"), Mortgage Electronic Registration System ("MERS"), and Planet Home Lending, LLC ("Planet"), unlawfully sold, assigned and/or transferred their ownership and security interest in a home located at 10577 Flemings Drive, Collierville, Tennessee. (ECF No. 1-2.) On November 25, 2014, defendant Ginnie Mae filed a Notice of Removal

---

[1]Defendant Planet Home Lending, LLC ("Planet"), was originally listed as a defendant in the complaint as "Servicer (TBD)." (ECF No. 1-5.) The Renfroes allege that Servicer (TBD) "is the purported Master Servicer for Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust." (Compl. ¶ 6, ECF No. 1-2.) The court assumes that Planet was served with the complaint while this case was pending in state court.

to this court based on diversity jurisdiction. (ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Before the court are the motions to dismiss the complaint for failure to state a claim filed by Gennie Mae, MERS, Selene Finance LP,[2] Flagstar Bank, and Planet (collectively "Defendants"). (ECF Nos. 7, 14, 15, 23, 19.) The Renfroes have not responded to the Defendants' motions to dismiss. On December 1, 2014, Planet filed a counterclaim against the Renfroes. (Planet Home Lending's Counterclaim, ECF No. 13.) The Renfroes have not answered within the twenty-one days after being served with Planet's counterclaim. *See* Fed. R. Civ. P. 12(a)(1)(B). For the reasons that follow, it is recommended that the Defendants' motions to dismiss be granted.

## I. PROPOSED FINDINGS OF FACT

The Renfroes' thirty-two page, 153-paragraph complaint relates to the title of the Renfroes' principal residence located at 10577 Flemings Drive, Collierville, TN 38107 (the "Property"). Because the complaint contains minimal factual allegations, the court will consider the public records of the Shelby County Register attached to Planet's Counterclaim and part of this record which are central

---

[2]The Renfroes served the complaint upon Selene Finance LP, but Selene Finance LP is not listed as a defendant nor mentioned at any point in the body of the complaint. Accordingly, the court recommends that Selene Finance LP be dismissed from the instant suit.

to the complaint to construe the events leading to the instant action.[3]

On August 25, 2011, Paul Renfroe executed a promissory note in the principal amount of $184,729.00 in favor of Flagstar. (ECF No. 13-2.) To secure the note, the Renfroes executed a Deed of Trust encumbering the Property to MERS as nominee for Flagstar. (ECF No. 13-3.)[4] Subsequently, on September 16, 2014, MERS assigned the Deed of Trust to Planet. (ECF No. 13-4.)[5]

According to the complaint, at some unidentified point in time, the note was transferred to Ginnie Mae, "acting as the Trustee for the TRUST 2011-122." (Comp. ¶ 30, ECF No. 1-2.) The Renfroes allege that their loan was securitized by the Defendants, "with other loans and mortgages with an aggregate principal balance of approximately $586,134,233 into the TRUST 2011-122 Trust." (*Id.*) Further, the Renfroes allege that unspecified defendants

_____

[3]The court may consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,'" without converting the motion to one for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)(quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011)(quoting *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may also consider "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini*, 259 F.3d at 502 (internal quotations and citations omitted).

[4]This Deed of Trust was recorded with the Shelby County Register on August 31, 2011 as Instrument No. 11085588.

[5]The Assignment of Deed of Trust from MERS to Planet is recorded with the Shelby County Register as Instrument No. 14096141.

"prepar[ed], post[ed], publish[ed], and record[ed] . . . the Notice of Default, Notice of Trustee's Sale, Trustee's Deed and . . . documents evidencing the commencement [sic] of a judicial foreclosure," but do not otherwise state when they received it or any other facts surrounding it. (*Id.* ¶ 105.)   It is unclear from the complaint whether any foreclosure proceedings on the Property have been commenced.

Based on these events, the Renfroes brought suit against the Defendants asserting the following causes of action: (1) lack of standing/wrongful foreclosure; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) slander of title; (6) action to quiet title; (7) declaratory relief; (8) violation of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA"); (9) violation of the Real Estate Settlement Procedure Act ("RESPA"); and (10) rescission.  (*Id.* ¶¶ 56-153.)

## II.  PROPOSED CONCLUSIONS OF LAW

A.   Standard of Review for Failure to State a Claim

In assessing whether the Renfroes' complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F.

App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  <u>The Renfroes' Lack of Standing/Wrongful Foreclosure Claim – First Cause of Action</u>

The Renfroes' complaint contains minimal factual allegations specific to the Renfroes' loan as well as irrelevant and sweeping legal conclusions. Nearly all of the Renfroes' allegations are copied verbatim from a generic complaint readily available online.[6] As to the Renfroes' wrongful foreclosure claim, there is no allegation in the complaint that any of the Defendants has attempted to foreclose on the Property. Therefore, the Renfroes have not

---

[6]The generic complaint that the Renfroes used is located at: http://www.certifiedforensicloanauditors.com/pdfs/sample-complaint-package/Complaint-Petition.pdf.

established that they have incurred an injury.  Even assuming that the Property has been foreclosed, the Renfroes fail to allege "any statutory or contractual requirements that were not met in pursuing foreclosure."  *See* *Jackson v. WMC Mortgage Corp.*, No. 2:12-CV-02914-JPM-CG, 2013 WL 5550228, at *8 (W.D. Tenn. Oct. 8, 2013).

As to the lack of standing claim, all of the Renfroes' arguments are premised on the erroneous theory that the Defendants do not have a valid interest in the Property due to deficiencies in the multiple assignments of the loan as well as the securitization process.  As set forth below, each of these claims fails as a matter of law.

1.  *Assignments of Note and Deed of Trust*

The Renfroes equivocally contend that "[w]hen the loan was sold to each intervening entity, there were no Assignments of the Mortgage/Deed of Trust to or from any intervening entity at the time of the sale," and that "[n]o Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred under Tennessee law."  (Comp. ¶ 49, ECF No. 1-2.)  The Renfroes further argue that "under the Tennessee recording act . . . the assignment must be recorded as soon as possible."  (*Id.* ¶ 61.)

The Renfroes lack standing to challenge any assignment of the Note because courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee.  *In re Cook*, 457 F.3d 561, 567 (6th Cir. 2006)("[B]ecause neither the

debtors nor the Trustee [were] parties to the [assignment] . . . [t]hey lack standing to enforce it."); *Bridge v. Aames Capital Corp.,* No. 109CV2947, 2010 WL 3834059, at *4 (N.D. Ohio Sept. 29, 2010)(holding that the plaintiff lacked standing to challenge assignment of the mortgage because she was not a party to the transfer); *Livonia Prop. Holdings v. Farmington Road Holdings,* 717 F. Supp. 2d 724, 735 (E.D. Mich. 2010)(holding that the plaintiff borrower did not have standing to dispute the validity of an assignment between assignor and assignee because plaintiff was "a non-party to those documents"). Because the Renfroes were not parties to the transfers nor were their contractual obligations under the Note or the Deed of Trust affected in any way, they lack standing to challenge any assignment of the loan.

As to the Renfroes' argument that the failure to record the assignments rendered the assignments unenforceable, Tennessee law "does not require recordation of an assignment in order for the assignee to enforce the lien." *Dauenhauer v. Bank of N. Y. Mellon*, No. 3:12-CV-01026, 2013 WL 2359602, at *4-5 (M.D. Tenn. May 28, 2013) *aff'd*, 562 F. App'x 473 (6th Cir. 2014); *W.C. Early Co. v. Williams*, 135 Tenn. 249, 186 S.W. 102, 103 (1916)("[I]n this state we have no statutory requirement that the assignee of notes secured by a mortgage or trust deed must, in order to the preservation of his lien as against third persons, record an assignment of the instrument which secures same."). Accordingly, any claims premised on defective assignments of the loan fail as a matter of law.

2.  *Securitization Arguments*

The Renfroes also assert that the Defendants do not have the right to foreclose because of deficiencies in the securitization process.  Specifically, the Renfroes contend that the Defendants failed to comply with the Trust's Pooling and Servicing Agreement ("PSA").  (*See* Compl. ¶¶ 44, 49, ECF No. 1-2.)  The Renfroes also maintain that a deficiency exists in the securitization process because of the "splitting or separation of title, ownership and interest in [the Renfroes'] Note and Mortgage/Deed of Trust."  (*Id.* ¶ 49.)

The Renfroes' allegations regarding the deficiencies in the securitization process are vague and conclusory.  The Renfroes do not invoke any statute that was allegedly violated nor do they state what PSA requirements were not complied with.  First, the securitization of the Renfroes' loan does not render the Note or the Deed of Trust unenforceable.  *Dauenhauer*, 2013 WL 2359602, at *5 (citations omitted).  "Rather, securitization creates 'a separate contract, distinct from a plaintiff's debt obligations under the [note].'"  *Id.* (quoting *Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 642 (E.D.Va.2010)).  Therefore, the fact that the Renfroes' Note was securitized did not absolve them from their loan obligation or shield them from foreclosure.  *Id.* (citation omitted).

Further, contrary to the Renfroes' assertion, securitization does not involve a "splitting" of the Note from the Deed of Trust.

It is well-settled under Tennessee law that the transfer of a promissory note automatically carries with it the lean created by the deed of trust. *Gibson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-2173-STA, 2012 WL 1601313, at *4 (W.D. Tenn. May 7, 2012); *Samples v. Bank of Am., N.A.*, No. 3:12-CV-44, 2012 WL 1309135, at *4 (E.D. Tenn. Apr. 16, 2012).

Lastly, the Renfroes do not have standing to challenge the PSA. "Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with PSA provisions, based on the borrowers' lack of standing." *Dauenhauer*, 2013 WL 2359602, at *5; *see also Livonia Prop. Holdings*, 717 F. Supp. 2d at 748 (finding that the plaintiff did not have standing to challenge compliance with the PSA because he was not a party to the agreement). The Renfroes were not parties to the PSA at issue, and therefore, they lack standing to challenge any non-compliance with PSA provisions. Accordingly, any claims based on the securitization process must be dismissed.

3. *Validity of MERS as Nominee*

The Renfroes also argue that MERS "lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage." (Compl. ¶ 63, ECF No. 1-2.) Further, the Renfroes argue that "MERS lacked authority as mere nominee to assign [the Renfroes'] mortgage, making any assignment from MERS defective." (*Id.* ¶ 70.)

"MERS is a company that provides mortgage recording services

to lenders and allows the lenders to trade the mortgage note and servicing rights on the market with MERS maintaining electronic recordings of each transaction." *Dauenhauer*, 2013 WL 2359602, at *3 (citations and internal quotation marks omitted). "Courts have consistently upheld the validity of MERS's role as nominee for a promissory note's lenders and assigns, and as beneficiary under a deed of trust." *Id.* (citations omitted). Therefore, the mere listing of MERS as the beneficiary does not render the Deed of Trust invalid.

Furthermore, the Deed of Trust names MERS as "nominee for Lender and Lender's successors and assigns." (Deed of Trust 1, ECF No. 13-3.) Several courts have held that such language "grants MERS the authority 'to act as the agent of any valid note holder, including assigning a deed of trust and enforcing a note.'" *Dauenhauer*, 2013 WL 2359602, at *4 (quoting *Samples,* 2012 WL 1309135, at *4). The Deed of Trust also states that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Agreement." (Deed of Trust 2, ECF No. 13-3.) The court finds that under the terms of the Deed of Trust, MERS could validly assign the mortgage. The Renfroes have offered no legal or factual basis for disregarding the Deed of Trust. Any purported claims, therefore, based on MERS's authority to assign under the Deed of Trust

or the role of MERS in the mortgage transactions should be dismissed.

C.   The Renfroes' Fraud in the Concealment and Fraud in the Inducement Claims – Second and Third Causes of Action

Count II and III are fraud-based claims arising out of the securitization and the multiple assignments of the Note. A plaintiff claiming fraud in Tennessee must show:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 311 (Tenn. 2008). In addition, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The Sixth Circuit requires plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.,* 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)).

In support of the fraud-in-the-inducement claim, the Renfroes allege that the Defendants misrepresented that they were holders and owners of the Note and beneficiaries of the Mortgage/Deed. (Compl. ¶ 87, ECF No. 1-2.) These allegations fall short of the necessary specificity required to state a claim for fraud. Moreover, the Renfroes have failed to set forth any facts to support a plausible

inference these representations are fraudulent or even mistaken. Public records of the Shelby County Register reflect MERS and Planet have both been holders of the Deed of Trust. (*See* ECF Nos. 13-3, 13-4.) Further, the Renfroes have not alleged that they suffered any ascertainable injury as a result of the alleged misrepresentation because the Renfroes have not alleged that any of the defendants has foreclosed on the Property. Therefore, the court recommends dismissal of the Renfroes' fraud-in-the-inducement claim.

As to the fraud-in-the-concealment claim, the Renfroes argue that the Defendants concealed the fact that the loan was securitized and the terms of the Securitization Agreement. (Compl. ¶ 77, ECF No. 1-2.) To establish fraudulent concealment, a plaintiff must allege, *inter alia*, that the defendant "remained silent and failed to disclose material facts despite a duty to do so." *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998); *Haigh v. Orlans Assocs., P.C.*, No. 12-10867, 2012 WL 1365081, at *6 (E.D. Mich. Apr. 19, 2012)(citation and internal quotation omitted).

This claim also fails as a matter of law because the Renfroes have not alleged that the Defendants had a legal or equitable duty to disclose any supposed misrepresentation. Further, the Renfroes have not plausibly alleged that the securitization of the loan constitutes a material fact which the Defendants were required to disclose. As discussed above, the Renfroes' obligations under the Note or the Deed of Trust were not affected by the securitization process. Accordingly, the court recommends that the Renfroes' fraud

claims be dismissed.

D.   The Renfroes' Intentional Infliction of Emotional Distress
     Claim – Fourth Cause of Action

The Renfroes allege that the Defendants' actions constitute outrageous or reckless conduct, and as a result, the Renfroes have suffered severe emotional distress.   (Compl. ¶¶ 95, 100, ECF No. 1-2.)

In order to state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must establish the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004)(citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).   To meet the second required element, it is not sufficient for a plaintiff to establish that a defendant "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Id*.   Rather, a plaintiff must show that the defendant's conduct was:

> so outrageous in character, and so extreme in degree, as
> to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a
> civilized community.   Generally, the case is one in which
> the recitation of the facts to an average member of the
> community would arouse his sentiments against the actor,
> and lead him to exclaim, "Outrageous."

*Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (1966), *abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437, 444-46 (Tenn.

1996)(quotation omitted). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not sufficient to create liability for mental distress. *Id*. A plaintiff must also show that the "outrageous" conduct of the defendant also caused emotional distress "so severe that no reasonable [person] could be expected to endure it." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004).

The Renfroes' complaint contains no factual allegations that support an intentional infliction of emotional distress claim. The Renfroes do not allege facts against a particular defendant, but attempt to collectively hold them liable, thus making it impossible for each Defendant to be put on sufficient notice of their allegedly unlawful actions. Also, as discussed above, the complaint fails to sufficiently allege that the Defendants' actions were tortious or fraudulent, let alone outrageous. Moreover, the Renfroes do not allege that they have suffered a serious mental injury as a result of the allegedly outrageous conduct. Therefore, as a matter of law, the Renfroes have not made allegations sufficient to support an intentional infliction of emotional distress claim.

E.    The Renfroes' Slander of Title Claim – Fifth Cause of Action

The Renfroes allege that the Defendants "disparaged Plaintiff's exclusive valid title by and through preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the

commencment [sic] of judicial foreclosure by a party who does not possess that right." (Compl. ¶ 105, ECF No. 1-2.) According to the Renfroes, as a result of Defendants' conduct in publishing these documents, their title to the Property has been disparaged and slandered, and there is a cloud on the Renfroes' title. (*Id.* ¶ 107.)

To succeed on a claim for slander of title, a plaintiff must show: "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999)(quotation omitted).

The Renfroes slander of title claim is meritless. First and foremost, the Renfroes' complaint fails to allege rudimentary facts such as the identify of the Defendant who sent the above-listed documents or the dates these documents were sent. Further, the Renfroes have not identified any false statements found in these documents. The Renfroes merely claim that the Defendants "had no right, title, or interest in the Property," (Compl. ¶ 106, ECF No. 1-2). As discussed above, however, such claim is meritless and in direct conflict with Shelby County Register records. Accordingly, the court recommends that the Renfroes' slander of title claim be dismissed.

F.   The Renfroes' Quiet Title Claim – Sixth Cause of Action

The Renfroes request that the court enjoin the Defendants "from asserting any adverse claim to [the Renfroes'] title to the Property. (*Id.* ¶ 118.) To succeed on a claim for quiet title, the plaintiff "must show that he himself has the title, or else he has no right to have a cloud removed from that to which he has no title in himself." *Dauenhauer*, 2013 WL 2359602, at *6 (quoting *Hoyal v. Bryson*, 53 Tenn. 139, 141 (1871)).

In order to obtain superior title to the Property, the Renfroes must fulfill their obligation under the Note. The Renfroes agreed in the Deed of Trust that the Trustee maintained an interest in the Property and that MERS held legal title to the Property until the Renfroes paid in full their debt under the Note. (*See* Deed of Trust 1-2, ECF No. 13-3.) The Renfroes have not alleged that they have fulfilled their obligation under the Note. Therefore, they do not have the right under the Deed of Trust to obtain title to the Property. The Renfroes have failed to allege facts sufficient to show that they have legal title to the Property, and accordingly, the court recommends that this claim be dismissed.

G.  The Renfroes' Violation of TILA and HOEPA Claim – Eighth Cause of Action

According to the Renfroes, the Defendants violated TILA and HOEPA by "failing to provide [them] with accurate material disclosures required under TILA/HOEPA . . . and advise them to compare similar loan products with other lenders." (Compl. ¶ 134, ECF No. 1-2.) The Renfroes further allege that the statute of limitation

is tolled "due to Defendants' failure to effectively provide the required disclosures and notices." (*Id.* ¶ 135.)

It is unclear what particular disclosures each Defendant failed to provide to the Renfroes. The Renfroes' complaint contains no facts from which the court can infer a violation of either TILA or HOEPA. Further, the statute of limitations to bring a claim under either TILA or HOEPA is one year. *See* 15 U.S.C. § 1640(e). The one-year statute of limitations begins to accrue on the date of the occurrence of that violation. *Id.* The Note and Deed of Trust were executed on August 25, 2011; therefore, any claims based on this transaction are time-barred. The Renfroes do not allege any facts that would implicate the equitable tolling doctrine. Accordingly, the court recommends that the Renfroes' TILA and HOEPA claims be dismissed.

H.   <u>The Renfroes' Violation of RESPA Claim – Ninth Cause of Action</u>

The Renfroes have also raised a claim under RESPA. The Renfroes aver that the "Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall." (Compl. ¶ 147, ECF No. 1-2.) Further, according to the Renfroes, "[t]he interest and income that Defendants have gained is disproportionate to the situation Plaintiff find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer financially as a result of the loan product sold to Plaintiff." (*Id.* ¶ 145.)

RESPA imposes certain duties on loan servicers. RESPA requires a servicer of a federally related mortgage loan to notify the borrower of an assignment, sale, or transfer not less than fifteen days before the transfer of the servicing rights. 12 U.S.C. § 2605(b)(2). Additionally, RESPA requires the transferee of loan servicing rights to notify the borrower of an assignment, sale, or transfer not more than fifteen days after the transfer of the servicing of the mortgage loan. 12 U.S.C. § 2605(c)(2). Further, 12 U.S.C. § 2605(e) requires a loan servicer to take certain steps in response to a borrower's request for information relating to the servicing of a loan.

To plead a claim under RESPA, a plaintiff must allege either (1) actual damages as a result of failing to comply with the provisions of RESPA, or (2) a pattern or practice of nondisclosure by the defendant that would warrant statutory damages. 12 U.S.C. § 2605(f)(1). "[A] plaintiff borrower, who cannot show actual damages as required by § 2605(f), fails to state a claim under RESPA as a matter of law." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 911 (S.D. Ohio 2013).

The Renfroes have not alleged which of the Defendants has violated RESPA nor what specific RESPA provision the Defendants have violated. The Renfroes' RESPA claim is so vaguely pleaded that it is insufficient to put each defendant on notice of the violation claimed by the Renfroes. Further, although the Renfroes generally state they are entitled to "damages in an amount not yet ascertained,"

they fail to allege how they suffered any actual damages from any alleged breach of duty under RESPA. Therefore, the Renfroes fail to state a claim under RESPA and the court recommends dismissal of this claim.

I.  The Renfroes' Declaratory Relief and Rescission of Loan Claims – Seventh and Tenth Causes of Action

The Renfroes request that the court issue declaratory relief to the Renfroes and determine the validity of the Deed of Trust as of the date the Notes were assigned. (Compl. ¶ 125, ECF No. 1-2.) Further, the Renfroes ask the court to determine the validity of the Notice of Default and the Defendants' authority to foreclose. (*Id.* ¶¶ 126, 127.) The Renfroes request that this court rescind the loan and all accompanying loan documents for all the reasons set forth above. (*Id.* ¶ 150.)

Declaratory relief and rescission are remedies, not claims. To obtain declaratory relief, the Renfroes must show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). The Renfroes do not attempt to have this court determine the validity of the Deed of Trust itself. The Renfroes merely object to the assignments of the Deed of Trust and the securitization process. As discussed throughout, the Deed of Trust did not forbid assignments, and the Renfroes do not have standing to challenge the assignments. The

Renfroes' "status and obligations under the [Deed of Trust] are unaffected by the assignment, and thus, there is no aspect of the [Deed of Trust] that needs determination." *Bridge v. Aames Capital Corp.*, No. 109CV2947, 2010 WL 3834059, at *5 (N.D. Ohio Sept. 29, 2010). As to the Notice of Default, the Renfroes have neither attached such notice nor provided facts sufficient for the court to make a determination on its validity. Similarly, the Renfroes have not provided sufficient facts for the court to determine whether the Defendants have authority to foreclose.

Lastly, the Renfroes' request for rescission is based on the same infirm claims made in their complaint and hereby dismissed by the court. (*See* Compl. ¶ 150, ECF No. 1-2.) Therefore, the court recommends that the Renfroes' requests for declaratory relief and rescission be dismissed.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motions to dismiss be granted and that Renfroes' claims against all Defendants dismissed for failure to state a claim upon which relief may be granted.[7]

Respectfully submitted this 2nd day of March, 2015.


s/ Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

_____

[7]The only claim that remains is Planet's counterclaim against the Renfroes, (ECF No. 13).

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.